# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMEO BALBIN DUMLAO, JR., | Case No.: 13cv1190 MMA (JLB) |
| Petitioner, | |
| | **(1)  REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| | **(2) ORDER DENYING MOTION FOR EVIDENTIARY HEARING (ECF No. 95)** |
| SCOTT KERNAN, Secretary,[1] | |
| Respondent. | |
| | **(3) ORDER DENYING MOTION FOR DISCOVERY (ECF No. 97)** |

## I.      INTRODUCTION

Petitioner Romeo Balbin Dumlao, Jr. ("Petitioner" or "Dumlao"), a state prisoner proceeding *pro se* and *in forma pauperis*, has filed an Amended Petition for Writ of

---

[1]  Jeffrey A. Beard, formerly named as Respondent in this case, is no longer the Secretary of the California Department of Corrections and Rehabilitation; rather, Scott Kernan has recently been appointed Secretary of that agency.  The Court therefore substitutes "Scott Kernan" as Respondent in place of "Jeffrey A. Beard."   *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.").

Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction for gross vehicular manslaughter in case number SCD227047.  (Am. Pet. at 1, ECF No. 87 "Pet.")[2]  Dumlao also requests an evidentiary hearing (ECF No. 95) and leave to conduct discovery (ECF No. 97).  The Court has reviewed the Amended Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the Traverse, the motions, the lodgments, the record, and all the supporting documents submitted by both parties.  For the reasons discussed below, the Court **DENIES** the motion for an evidentiary hearing, **DENIES** the motion for discovery, and **RECOMMENDS** the Petition be **DENIED**.

## II.   FACTUAL BACKGROUND

Because Petitioner pleaded guilty and subsequently abandoned his direct appeal, there is no state court decision outlining the facts of this case.  Accordingly, the Court will briefly summarize the facts as set forth in the San Diego County Probation Department's Sentence Report.[3]

On December 31, 2009, shortly after 9:00 a.m., Dumlao was driving his Toyota toward an intersection.  (Lodgment No. 1, Clerk's Tr. at 14.)  Cynthia Heffington ("Heffington") was stopped at a red light at the intersection.  Her 9-year-old daughter, Ashley Heffington ("Ashley"), was in the left rear passenger seat.  (*Id*.)  Dumlao collided into the rear end of Heffington's car, causing a chain reaction, pushing Heffington's car into three vehicles in front of her.  Dumlao's car overturned and came to rest on its roof. (*Id*.)

As a result of the collision, Ashley sustained major injuries including a skull fracture and a fractured femur.  (*Id*. at 14-15.)  She was transported to the hospital and placed on life support.  (*Id*. at 15.)  Heffington sustained lacerations to her face and head,

---

[2]  Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

[3]  The source for the factual summary contained in the sentencing report was a San Diego Police Department Investigator's report, dated May 4, 2010.  (*See* Lodgment No. 1, Clerk's Tr. at 14.)

neck pain, and hip pain.  (*Id.*)  Heffington was treated at the hospital and released.  (*Id.*)  The drivers of the three other vehicles also suffered injuries and were treated at the scene by paramedics.  (*Id.*)

Dumlao told emergency personnel that he had taken the prescription medications Seroquel and Prozac for his schizophrenia.  (*Id.*)  Law enforcement officers reported his eyes were dilated and suspected he was under the influence of a controlled substance.  (*Id.*)

On January 11, 2010, Ashley was removed from life support and died from her injuries later that evening.  (*Id.*)

A test of blood taken from Dumlao after the collision revealed the presence of Diflourethane, a propellant found in aerosol cleaning products that can cause disorientation and light-headedness when inhaled.  (*Id.*)  Dumao denied using inhalants.  (*Id.* at 16.)  On January 20, 2010, a police investigator searched the inside of Dumlao's car, which was being stored during the investigation.  The investigator discovered four aerosol cans in the passenger compartment of the vehicle.  (*Id.*)  On May 1, 2010, Dumlao was arrested.  (*Id.*)

## III.   PROCEDURAL BACKGROUND

On May 14, 2010, the District Attorney filed an amended information, charging Dumlao with one count of gross vehicular manslaughter while intoxicated (Cal. Penal Code § 191.5(a) (count one)) and one count of driving under the influence causing injury (Cal. Veh. Code § 23153(a) (count two)).  As to both counts, it was alleged Dumlao inflicted great bodily injury to four victims (Cal. Penal Code § 12022.7(a)).  As to count two, it was also alleged Dumlao cause great bodily injury to Ashley (*id.*) and caused bodily injury or death to more than one victim (Cal. Veh. Code § 23558).  (Lodgment No. 1, Clerk's Tr. at 5-7.)

On June 10, 2010, Dumlao pleaded guilty to manslaughter of Ashley, and admitted to personally inflicting great bodily injury to Heffington and one other person injured in the crash.  (Lodgment No. 1, Clerk's Tr. at 9-10.)  As part of the plea agreement, the

3

remaining charges and allegations were dismissed.  On July 12, 2010, Dumlao was sentenced to sixteen years in prison.  (*Id*. at 21-22, 34.) The sentence had been stipulated by the parties as part of the plea agreement. (*Id.* at 9.)

Dumlao filed a notice of appeal on July 21, 2010.  (Lodgment No. 1, Clerk's Tr. at 23-24.)  On January 25, 2011, appointed appellate counsel submitted a no-merit brief pursuant to *People v. Wende*, 25 Cal. 3d 436 (1979).  (*See* Lodgment No. 3.)   Dumlao ultimately requested the appeal be abandoned, and the Court of Appeal dismissed the appeal on July 12, 2011.  (*See* Lodgment Nos. 5 & 6.)

On October 24, 2011, Dumlao filed a petition for writ of habeas corpus in the San Diego County Superior Court.  (Lodgment No. 7.)  He claimed his sentence was erroneous, the complaint was defective, and he was improperly denied a hearing on his competency.  (*See id*.)  The trial court denied the petition on November 10, 2011. (Lodgment No. 8.)  Dumlao filed another habeas petition in the trial court on January 11, 2012, arguing that the court had failed to address an issue raised in his October 24, 2011 petition.  (Lodgment No. 9.)  On January 18, 2012, the trial court denied the petition. (Lodgment No. 10.)

On April 12, 2012, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, arguing he was denied his Sixth Amendment right to effective assistance of counsel, his Fourth Amendment rights were violated by the seizure of his blood after the collision, and he was denied a competency hearing in violation of his due process rights.  (*See* Lodgment No. 11.)  The appellate court found the issues raised in the petition had not been first raised in the trial court.  As such, the court denied the petition without prejudice to Dumlao filing the petition in superior court.  (Lodgment No. 12.)

On May 8, 2012, Dumlao filed a petition for writ of habeas corpus in San Diego Superior Court raising the same claims contained in his petition to the appellate court. (Lodgment No. 13.)  The trial court denied the petition in a reasoned decision on June 29, 2012.  (Lodgment No. 14.)  Petitioner then returned to the California Court of Appeal,

filing a petition on July 31, 2012.  (Lodgment No. 15.)  The appellate court denied the petition on the merits on August 15, 2012, in a short reasoned decision.  (Lodgment No. 16.)  Finally, Dumlao filed a habeas petition in the California Supreme Court raising the same claims.  (Lodgment No. 17).  The court denied the petition without comment or citation on January 23, 2013.  (Lodgment No. 19.)

On May 17, 2013, Dumlao filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court, raising four grounds for relief.  (ECF No. 1.)  On June 14, 2015, this Court granted Petitioner leave to file an amended petition in order to re-articulate portions of one of his claims.  (ECF No. 61.)  The Court subsequently granted several extensions of time to file the amended petition.  (*See* ECF Nos. 74, 77.)   On January 2, 2015, Petitioner filed another motion for leave to file an amended petition, in which he sought to abandon all of his claims but his ineffective assistance of counsel claim.  (ECF No. 81 at 2.)  This Court granted the motion on March 25, 2015 (ECF No. 86), and the First Amended Petition ("Petition") was filed the same day.  (ECF No. 87.)  Respondent filed an Answer on April 28, 2015.  (ECF No. 88.)  Dumlao filed a Traverse on June 25, 2015.  (ECF No. 92.)  Petitioner filed a Motion for Evidentiary Hearing on July 2, 2015 (ECF No. 95) and a Motion for Order Authorizing Discovery on July 6, 2015.  (ECF No. 97.)

## IV.   SCOPE OF REVIEW

Dumlao's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring

only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.  *Id*.  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).   "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).  If the dispositive state court order does not "furnish a basis for its

reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75-76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  *See Early*, 537 U.S. at 8.  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law.  *Id*.  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Andrade*, 538 U.S. at 72.

## V.   DISCUSSION

Dumlao argues trial counsel was ineffective in three ways.   First, he claims defense counsel failed to adequately investigate and challenge his mental competency.  (Pet. at 84-92.)  Second, he argues defense counsel improperly advised him to plead guilty "in exchange for the maximum allowable sentence."  (*Id.* at 93-95.)  Finally, Dumlao contends defense counsel was ineffective in failing to file a demurrer to the complaint.  (*Id.* at 95-96.)

### A.   Clearly Established Law

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  He must also show he was prejudiced by counsel's errors.  Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694; *see also Fretwell v.*

7

*Lockhart*, 506 U.S. 364, 372 (1993).  Further, *Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential."  *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  *Id.* at 697.

> B.  <u>Failure to Investigate and Challenge Petitioner's Competency</u>

Dumlao argues defense counsel was ineffective because he failed to investigate Dumlao's competency to plead guilty and failed to request a competency hearing.  (*See* Pet. at 88-92.)  Respondent argues the state court's denial of the claims was neither contrary to, nor an unreasonable application of, clearly established law.  (*See* Resp't Mem. P. & A. Supp. Answer at 5-7.)

Petitioner raised this claim in his petition for writ of habeas corpus filed with the California Supreme Court (*see* Lodgment No. 17 at 45-53), which was denied without comment or citation.  (Lodgment No. 18.)  Dumlao also raised the claim in the California Court of Appeal.  (*See* Lodgment No. 15.)  Although the appellate court issued a reasoned decision denying Dumlao's petition, it did not specifically address his claim that defense counsel was ineffective in failing to investigate his mental illness or raise the issues of competency.  (*See* Lodgment No. 16 at 3.)  Thus, this Court looks through to the San Diego Superior Court's June 29, 2012 decision denying Dumlao's habeas petition.  *See Ylst*, 501 U.S. at 805-06.  The court stated:

> Petitioner also agues counsel was ineffective for failing to raise the issues of Petitioner's competence.  Petitioner believes his life long mental disorders, dependency on psychotropic medications, drug abuse and a suicide attempt made it obvious that a competency hearing was necessary.
>
> "A defendant is mentally incompetent . . . . if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or assist counsel in the conduct of a defense in a rational manner."

(Pen. Code § 1367(a).)  Despite Petitioner's mental illness, drug or alcohol use or abuse, and suicide attempt, there is no indication that Petitioner was unable to understand the nature of the criminal proceedings or assist his attorney in a rational manner.  Thus the trial court did not err, and counsel was not ineffective, for failing to raise the issue of Petitioner's mental competence.

Petitioner's final argument is that his attorney was ineffective for failing to investigate Petitioner's mental illness in order to adequately raise the issue of his mental competence.  Again, Petitioner fails to show that he was unable to understand the nature of the criminal proceedings or assist his attorney in a rational manner.  Therefore he fails to show investigation by counsel would have been fruitful.  In other words, Petitioner fails to show his case was prejudiced by the alleged failure.

(Lodgment No. 14 at 5.)

A criminal defendant cannot be tried unless he is competent.  *Moran v. Godinez*, 509 U.S. 389, 396 (1993) (citing *Pates v. Robinson*, 383 U.S. 375, 378 (1966)).  The standard of competency for pleading guilty and standing trial is the same.  *Id.* at 399.  A defendant is "competent to plead guilty and stand trial if he had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.'"  *Deere v. Cullen*, 718 F.3d 1124, 1144 (9th Cir. 2013) (quoting *Godinez*, 509 U.S. at 396-98).  This standard is consistent with the standard applied to Dumlao's claim by the superior court.  *See Nguyen v. Garcia*, 477 F.3d 716, 724 (9th Cir. 2007) (equating competency standard articulated in California Penal Code section 1367 with the federal standard applied by the Supreme Court in *Godinez*).

To succeed on a claim that counsel was deficient for failing to move for a competency hearing, a petitioner must show there was "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt defendant's competency."  *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)); *see also Strickland*, 466 U.S. at 687.  The Ninth

Circuit has held that "trial counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired." *Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003). In order to establish prejudice, a petitioner must show there is a reasonable probability that he would have been found incompetent to plead guilty. *Deere,* 718 F.3d at 1145 (citing *Strickland*, 466 U.S. at 694); *Stanley*, 633 F.3d at 862.

Dumlao claims defense counsel should have investigated his competency and requested a hearing because counsel knew he had a history of mental illness, had previously attempted suicide, was not getting proper medication in jail, and was unable to sleep. (*See* Pet. at 88.)

There is no doubt Dumlao had a history of mental illness prior to the accident. Dumlao's schizophrenia was mentioned several times in police reports regarding the collision. After the crash, Dumlao told emergency personnel he was schizophrenic and taking the prescription medications Prozac and Seroquel. (Pet. at 18, Ex. 3.) His mother also told investigating officers that at the time of the incident, Dumlao had been taking Seroquel, Depakote and Prozac (also known as Fluoxetine) to manage his schizophrenia. (*Id.* at 20, Ex. 4.) Dumlao also states defense counsel had copies of his medical records, detailing his diagnosis and treatment for schizophrenia over the past ten years. Petitioner includes portions of these records as exhibits to his Petition. (*Id.* at 26-62, Exs. 7-16.) Although there is nothing in the state court record indicating whether, or to what extent, defense counsel had access to these *specific* reports, the Court assumes *arguendo* that defense counsel had some records documenting Petitioner's mental illness and treatment before the accident. Thus, there is little question defense counsel was aware Petitioner suffered from schizophrenia.

Dumlao argues that defense counsel should have investigated his competency because, in addition to his medical history, defense counsel knew he attempted suicide just prior to his arrest and he was not being properly medicated in jail. (Pet. at 88.) Petitioner clams he took an overdose of his prescription medication Seroquel just hours

10

before officers arrived to arrest him.  (Pet. at 65-66, Declaration.)  While there is no clear evidence of Dumlao's pre-arrest suicide attempt beyond Petitioner's own declaration,[4] arresting officers reported that Dumlao appeared "heavily medicated" when they arrived at his home, and that his father had to assist him down the steps leading to the front door.  (*See* Lodgment No. 17, Ex. 27.)  Accordingly, the Court will assume for argument's sake that defense counsel was aware Dumlao took an overdose of Seroquel on the day of his arrest.

As for his medication problems, Dumlao points to an e-mail his mother sent to his attorney on June 6, 2010.  In it, Mrs. Dumlao stated that her son was receiving Prozac and Depakote in jail, but he was not getting Seroquel, a medication he had been taking along with Prozac and Depakote before his arrest.  (Pet. at 14, Ex. 1.)  Mrs. Dumlao stated in the e-mail that without the Seroquel, Dumlao was not able to get enough sleep.  She said that Dumlao had told her that "because he [was not getting] enough sleep, he won't be able to do his best or able [sic] to stand trial."  (*Id*.)  She asked defense counsel if it would be possible to have Dumlao checked by a psychiatrist.  (*Id*.)  Defense counsel responded to Mrs. Dumlao via e-mail the next day.  He stated that he had hired a psychologist to go to the jail and "conduct a full psych evaluation."  (*Id*.)  He also indicated he would be visiting Dumlao the next day.  Lastly, counsel informed Mrs. Dumlao that he had hired an independent expert to review Dumlao's blood test results and the expert had concluded that given the very high level of Diflourethane in Dumlao's system, the evidence unequivocally showed he had been "huffing" prior to the accident.  (*Id*.)

As Respondent notes, habeas review under section 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). The e-mail from Mrs. Dumlao to defense counsel

---

[4] Petitioner includes exhibits related to a December 27, 2008 incident during which he threatened suicide and was subsequently hospitalized involuntarily.  (Pet. at 46, Ex. 15.)

concerning Dumlao's medication and trouble sleeping was not presented to the state courts.  (*See* Lodgment Nos. 13, 15, 17.)  As such, this Court is barred from considering the e-mail.  *Pinholster*, 563 U.S. at 182.; *see also Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013) (concluding evidence of ineffective assistance of counsel, that was not part of the record before the California Supreme Court when it considered the claim on the merits, could not be considered on federal habeas).  However, much of the substance of the e-mail is set forth in a declaration by Mrs. Dumlao, which was part of Petitioner's record before the California Supreme Court.  (Lodgment No. 17 at 173-74.)

Even considering the communication from Mrs. Dumlao that Petitioner was not receiving Seroquel (thus affecting his sleep) along with Petitioner's medical history and apparent suicide attempt, Dumlao has not established counsel's performance was deficient.  First, that Petitioner had been previously diagnosed with schizophrenia does not necessarily demonstrate he was incompetent to stand trial.  *See United States v. Garza*, 751 F.3d 1130, 1135 (9th Cir. 2014).  Moreover, while a genuine suicide attempt is certainly serious, not "every suicide attempt inevitably creates a bona fide doubt concerning the defendant's competency."  *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318-19 (9th Cir. 1997).

Most importantly, Petitioner concedes he was evaluated by a psychologist prior to his guilty plea.  (*See* Pet. at 66, Declaration.)  Indeed, according to Mrs. Dumlao's declaration, defense counsel responded to her concerns about Petitioner, and in an e-mail response he informed her that he had arranged for Dumlao to have a full psychiatric evaluation.  (Lodgment No. 17 at 174.)  Thus, counsel took reasonable action to investigate Petitioner's mental state prior to his guilty plea by having him evaluated by a psychologist.

Dumlao claims the evaluation was insufficient to determine his competency because the psychologist only asked questions about his mental state before, during, and after the accident.  (*See* Pet. at 80.)  There is, however, nothing to suggest the psychologist, whose report is not part of the record, gave defense counsel any reason to

question Petitioner's competency or to believe that further investigation was needed. Petitioner has therefore not overcome the "strong presumption" that counsel's conduct was "within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689-90.)

Assuming Dumlao's lawyer should have requested a competency hearing, Dumlao would not be entitled to relief because the state court reasonably concluded there was no reasonable probability he would have been found incompetent to plead guilty. "The bar for incompetency is high." *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008). As discussed above, a defendant must show he lacked either a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him." *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (internal quotations omitted). The question is "not whether [Petitioner] had a mental illness that affected his decision, but whether he had a mental illness that affected his capacity to understand his situation and make rational choices." *Deere*, 718 F.3d at 1147 (citing *Dennis v. Budge*, 378 F.3d 880, 890 (9th Cir. 2004)).

Petitioner has presented no specific evidence which shows he was unable to understand the proceedings or cooperate rationally with counsel. The reports documenting his mental illness and treatment do not provide evidence of his competency or incompetency at the time of his guilty plea. The majority of the reports attached to the Petition are from January and February of 2009, almost a year and a half before his guilty plea and shortly after Dumlao threatened suicide and was hospitalized. (*See* Pet. at 27-42, Exs. 7-11; 46-47, Ex. 13.) Other reports date back to August 2000, when it appears Petitioner was initially diagnosed. (*See id*. at 51-60, Exs. 15-16.)

The most recent report included with Dumlao's Petition is dated December 12, 2009. In it, a psychiatrist completed a "mental capacities evaluation" form that listed several signs and symptoms. (*Id.* at 16, Ex. 2.) The doctor checked the boxes indicating

1   Dumlao showed signs of "paranoid thinking or inappropriate suspiciousness,"

2   "hallucinations or delusions," "mood disturbance," "difficulty thinking or concentrating,"

3   and "feelings of guilt or worthlessness."  (*Id*.)  The single-paged form also included a

4   notation that Dumlao was prescribed Seroquel, Depakote and Prozac.  (*Id*.)  A form

5   containing only a list of checked boxes does not indicate whether Petitioner's symptoms

6   would have rendered him legally incompetent to stand trial.  Indeed, the December 2009

7   report provides little to no evidence regarding Petitioner's ability to understand court

8   proceedings or assist defense counsel almost six months later, in June of 2010.  *Dent v.*

9   *Knowles*, 448 F. App'x 705, 706 (9th Cir. 2011) (finding evidence of competency at a

10  particular time "had little bearing on [petitioner's] competency over 18 months later").

11          That Dumlao had been diagnosed and treated for schizophrenia does not establish a

12  reasonable probability that he was unable to understand the proceedings against him, or

13  unable to consult with defense counsel.  Courts have consistently held that a diagnosis of

14  mental illness alone does not demonstrate that a petitioner is incompetent to stand trial.

15  *See, e.g.*, *United States v. Garza*, 751 F.3d 1130, 1137-38 (9th Cir. 2014) (finding

16  diagnoses of anxiety and dementia did not harbor doubt about defendant's competency to

17  understand the proceedings or assist in his own defense); *Boyde v. Brown*, 404 F.3d 1159,

18  1166 (9th Cir. 2005) (concluding an inmate's "major depression" and "paranoid

19  delusions" did not raise a doubt regarding his competence to stand trial); *Bassett v.*

20  *McCarthy*, 549 F.2d 616, 619 (9th Cir. 1977) (finding a schizophrenia diagnosis "do[es]

21  not necessarily imply that [petitioner] did not understand the proceeding or could not

22  cooperate with his counsel"); *Grant v. Brown*, 312 F. App'x 71, 73 (9th Cir. 2009)

23  ("[M]ental illness does not necessarily equate to incompetence."); *see also United States*

24  *v. Widi*, 684 F.3d 216, 221 (1st Cir. 2012) ("A defendant may have serious mental illness

25  while still being able to understand the proceedings and rationally assist his counsel.");

26  *Miller*, 531 F.3d at 349-50 (stating that although a defendant may show signs of paranoia

27  or other mental illness, such an illness would not necessarily render the defendant

28  incompetent to stand trial).

14

1       Dumlao claims he would have been found incompetent because "every known

2   medical report concluded that when unmedicated [he] was psychotic . . . [and] [s]ince

3   [he] was unmedicated when he pleaded [guilty] there is no reason to assume he was not

4   psychotic then as well."  (Pet. at 97.)  Contrary to his claim, however, Dumlao was not

5   unmedicated.  He acknowledges he was taking Prozac and Depakote while in custody

6   at the San Diego County Jail, including at the time of his guilty plea on June 10, 2010.[5]

7   (Pet. at 66; *see also* Lodgment No. 17 at 59.)  Indeed, in his petition for habeas corpus

8   filed with the California Supreme Court, Dumlao states that "at the interview [with

9   counsel prior to the change of plea hearing] and at the change of plea proceeding

10  Petitioner was under the influence of antipsychotic medications."[6]  (Lodgment No. 17 at

11  74; *see also* Lodgment No. 13 at 16.)  Even assuming Petitioner was "psychotic" when

12  without medication, this does necessarily show that he was incapable of understanding

13  the proceedings and assisting counsel at the time of his guilty plea when he was taking

14  Prozac and Depakote.  Nor does adding in consideration of the assertion by Mrs. Dumlao

15  to trial counsel that "since he does not get enough sleep, he won't be able to do his best or

16  be able to stand trial,"[7] necessarily demonstrate that he was incapable of understanding

17  the proceedings or assisting counsel with his defense.

18  ///

19

20  _____

21      [5] Although not part of the state court record, the Court notes that medical records from the San
    Diego County Jail, which were lodged in relation to Petitioner's motion for appointment of counsel,
22  indicate that Dumlao was prescribed only Prozac and Depakote while in county jail.  (*See* Lodgment No.
    21 at AGO 138.)  When he was transferred to the California Department of Corrections and
23  Rehabilitation after sentencing on July 15, 2010, it appears Petitioner was continued on Prozac and
    Depakote.  (*Id.* at AGO 285-86.)
24

25      [6] Before the state courts, Petitioner appeared to argue both that he was incompetent at the time of
    the guilty plea because he was not getting Seroquel and because he was under the influence of
26  antipsychotic medication.  (*See* Lodgment No. 17 at 62, 72.)

27      [7] As above, in his Petition, Dumlao cites to an e-mail from his mother which was not a part of the
    record before the state courts and therefore this Court is barred from considering it.  *See Pinholster*, 563
28  U.S. at 182.  The Court instead considers the declaration of Mrs. Dumlao.  (Lodgment No. 17 at 173.)

Finally, Dumlao argues that he would have been found incompetent because two days after he was sentenced on July 12, 2010, at which point he contends he was "stabilized on an antipsychotic," he expressed a desire to appeal.  (Pet. at 92.)  This, he claims, shows that had he been competent prior to his plea a month earlier, he would not have made the decision to plead guilty.  As discussed above, it is not a question of whether a mental illness affected a petitioner's decision, but whether it affected his capacity to understand his situation and make rational choices.  *Deere*, 718 F.3d at 1147 (citing *Budge*, 378 F.3d at 890).  Regardless of whether Petitioner had a change of heart after his sentencing, he has failed to show he was unable to understand the proceedings or assist defense counsel at the time of his plea.  *See Stanley*, 633 F.3d at 862.

In sum, Petitioner has not demonstrated that trial counsel failed to adequately investigate his competency.  *See Strickland*, 466 U.S. at 689-90.  Moreover, he has not shown a reasonable probability that he lacked a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'"  *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).  Accordingly, the state court's denial of Dumlao's claim that defense counsel was ineffective in failing to investigate and request a competency hearing was neither contrary to, nor an unreasonable application of, clearly established law.  28 U.S.C. § 2254 (d)(1); *Williams*, 423 U.S. at 412-13.  Furthermore, the state court's factual findings are reasonably supported by the evidence presented at the state court proceedings.  28 U.S.C. § 2254(d)(2); *Taylor*, 366 F.3d at 1001.  The Court therefore **RECOMMENDS** the claim be **DENIED**.

C.   Advice Regarding Guilty Plea

Dumlao also claims counsel was ineffective in advising him to plead guilty in exchange for a 16-year sentence.  (Pet. at 93-95.)  He argues counsel should have advised him that he was unlikely to have received the aggravated term for vehicular

16

manslaughter.  He further contends there was no factual basis to support any of the great bodily injury allegations.  (*Id.* at 93-94.)  Respondent argues the state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. (Resp't Mem. P. & A. Supp. Answer at 4.)

Petitioner raised this claim in a petition for habeas corpus to the California Supreme Court and it was denied without comment.  (*See* Lodgment Nos. 17 & 18.)  This Court therefore "looks through" to the last reasoned state court decision to address Dumlao's claim.  *See Ylst*, 501 U.S. at 805-06.  The Court of Appeal addressed the claim collectively with other allegations of ineffective assistance of counsel claims,[8] stating:

> To prevail on an ineffective assistance claim, a defendant must demonstrate that his trial counsel failed to act in a manner expected of a reasonably competent attorney and that he suffered prejudice (i.e., a reasonable probability that a more favorable outcome would have resulted thereof).  (*Strickland v. Washington* (1984) 466 U.S. 668, 686, 693-694; *In re Sixto* (1989) 48 Cal. 3d 1247, 1257.)

> Determination of whether counsel's representation was adequate requires a review of the record to determine if it contains any explanation for the challenged conduct.  (*People v. Pope* (1979) 23 Cal. 3d 412, 425.)  If the record shows that the acts or omissions resulted from "an informed tactical decision" within the range of reasonable competence, there is no ineffective assistance.  (See *In re Hall* (1981) 30 Cal. 3d 408, 426 [counsel must act as a reasonably competent attorney and is required to make rational and informed decisions on strategy and tactics based on adequate investigation and preparation].)  If, on the other hand, the record affirmatively shows that counsel failed to diligently research the law or investigate the facts, inadequate assistance of counsel is established.  (*Id.* at pp. 424-426.)  Where the record is silent as to why counsel acted

---

[8] In his petition to the appellate court, Dumlao argued defense counsel was ineffective in failing to file a motion to suppress, failing to file a motion to dismiss the complaint, failing to request a change of venue, failing to request a competency hearing, failing to adequately advise him regarding his guilty plea, and improperly advising him to waive his right to a preliminary hearing.  (*See* Lodgment No. 15 at 13-17.)

(or failed to act), ineffective assistance is established only where there could be no satisfactory explanation for the act or omission.  (*Id*. at p. 426.)

Here, the record fails to establish why counsel acted (or failed to act) in the manner that Dumlao now challenges. Further, as the superior court observed in its order denying Dumlao's most recent habeas petition, there may have been tactical reasons underlying those actions or inactions.   Thus, Dumlao has not made a prima facie showing that his counsel was ineffective.  (See *People v. Mendoza Tello* (1997) 15 Cal. 4th 264, 266-267.)

Moreover, to establish prejudice in the context of a guilty plea, the defendant must show that he accepted the plea bargain as a result of the attorney's incompetence and there is a reasonable probability, but for counsel's inactions, he would not have pled guilty, but insisted on going to trial.  (*In re Resendiz* (2001) 25 Cal. 4th 230, 253, abrogated on other grounds by *Padilla v. Kentucky* (2010) 130 S. Ct. 1473, 1484-1486.)  A mere assertion that he would not have pled guilty is not sufficient to make such a showing; rather the assertion "must be corroborated independently by objective evidence." (*In re Resendiz*, supra, at p. 253, quoting *In re Alvernaz* (1992) 2 Cal. 4th 924, 938.)

Here, Dumlao does not aver that he would have refused to plead guilty absent his counsel's alleged malfeasance. Further the objective evidence in the record does not support the inference that he would have insisted on proceeding to trial rather than entering the plea given that the evidence supporting his guilt was very strong.

(Lodgment No. 16 at 2-3.)

The two-prong *Strickland* test "applies to challenges of guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Defense counsel has a duty to provide a client with the information necessary to make "an intelligent assessment of the relative advantages of pleading guilty."  *Brady v. United States*, 397 U.S. 742, 748 n.6 (1970); *see also Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir.

1986).  To satisfy the prejudice prong, a petitioner "must show that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.

Petitioner contends counsel was ineffective for advising him to plead guilty "in exchange for the maximum allowable sentence."  (Pet. at 93.)  He claims he had nothing to lose, and indeed stood to gain, from going to trial because it was likely he would have received a lighter sentence than he received as a result of the plea agreement.  (*Id.* at 95.)

First, contrary to Dumlao's assertion, he did not receive the maximum possible sentence as a result of the plea agreement.  Dumlao was charged in count one with gross vehicular manslaughter while intoxicated in the death of Ashley, which carried a sentence of four, six or ten years.  Cal. Penal Code § 191.5(a).  In addition, it was alleged that during the commission of count one he caused great bodily injury to four victims, Cynthia Heffington, Kerri Zuba, Candice Loureiro and Jacques Jordan, in violation of Cal. Penal Code § 12022.7(a).  (Lodgment No. 1, Clerk's Tr. at 6-7.)  Each great bodily injury allegation carried an additional three-year prison term.  (*See id.*)  Thus, under California law at the time of his plea,[9]  Dumlao faced a possible maximum of 22 years in prison if convicted on count one and all the accompanying enhancements.  *See People v. Weaver*, 149 Cal. App. 4th 1301, 1335 (2007) (holding that great bodily injury enhancements could be applied to a gross vehicular manslaughter conviction), *overruled by People v. Cook*, 60 Cal. 4th 922, 935 (2015).

As for count two, Dumlao was charged with driving under the influence causing injury in violation of Cal. Veh. Code § 23153(a).  It was also alleged as to count two that

_____

[9] Recently, the California Supreme Court held that great bodily injury enhancements cannot attach to  murder or manslaughter convictions, including vehicular manslaughter.  *People v. Cook*, 60 Cal. 4th 922, 935 (2015).  The court stated that "a defendant convicted of murder or manslaughter who also commits crimes against other victims may be convicted of those additional crimes and, to the extent the sentencing laws permit, punished separately for them. But the sentence for manslaughter may not be enhanced for the infliction of great bodily injury as to anyone."  *Id.* at 924.  However, this was not the law at the time of Petitioner's guilty plea.

19

he caused great bodily injury to Ashley, Heffington, Zuba, Loureiro and Jordan in violation of Cal. Penal Code § 12022.7(a), which provides for a three-year enhancement for each victim of great bodily injury.  In addition, it was alleged he caused bodily injury or death to more than one victim in violation of Cal. Veh. Code § 23558.  (Lodgment No. 1, Clerk's Tr. at 7-8.)  If convicted on count two and all related enhancements, Dumlao faced a maximum possible sentence of 19 years in prison.  (*Id.* at 6.)

In sum, had Dumlao been found guilty on both counts and all enhancements, he would likely have faced a maximum sentence of 22 years in prison because the sentence and enhancements as to count two would have been stayed.[10]  Under the plea agreement, Dumlao admitted to counts one and two of the related great bodily injury allegations in exchange for a stipulated 16-year prison sentence and dismissal of the remaining counts.  Thus, he received a sentence at least six years less than his maximum exposure.

Furthermore, as the state court noted, the evidence against Dumlao was strong.  The elements of gross vehicular manslaughter while intoxicated are "(1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the negligent act, another person was killed."  *People v. Verlinde*, 100 Cal. App. 4th 1146, 1159 (2002).  Dumlao's blood showed high levels of Diflourethane, indicating he had been abusing inhalants before the accident.  (*See* Lodgment No. 1, Clerk's Tr. at 15.)  Several aerosol cans of computer keyboard cleaner were found in his car after the accident, which suggested he may have been "huffing" while behind the wheel of his car.

---

[10]  Under California sentencing law, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Cal. Penal Code § 654; *see also People v. Jones*, 54 Cal. 4th 350, 357 (2012).  "Section 654 applies to great bodily injury enhancements imposed for a victim who is also the victim alleged in separate counts that are not stayed under section 654."  *See People v. Calles*, 209 Cal. App. 4th 1200, 1220 (2012); *see also People v. Reeves*, 91 Cal. App. 4th 14, 56-57 (2001).

(*See* Lodgment No. 17 at Exs. 27 & 28.)   Given the evidence, there is little doubt Dumlao would have been convicted of gross vehicular manslaughter of Ashley.

Petitioner argues defense counsel's advice to accept the plea offer was unreasonable because it was unlikely he would have received the upper term for manslaughter conviction given that only one aggravating factor was present.  (Pet. at 95.)  Under California's sentencing law, the trial court is authorized to select the lower, middle or upper prison term "if circumstances justify[ing] that choice appear upon an evaluation of the record as a whole."  *People v. Castorena*, 51 Cal. App. 4th 558, 563 (1996) (internal citation omitted).  A sentencing court has broad discretion in selecting the appropriate sentence allowed by statute for a particular defendant.  *People v. Scott*, 9 Cal. 4th 331, 349-50 (1994).  "A sentencing court has wide discretion in weighing the aggravating and mitigating factors."  *People v. Evans*, 141 Cal. App. 3d 1019, 1022 (1983).

Despite Petitioner's claim, he could have been eligible for the upper term under more than one aggravating factor.  Under California law, a sentence may be enhanced to the upper term where the crime involved multiple victims.  *See People v. Calhoun,* 40 Cal. 4th 398, 405-08 (2007); *see also Ruezga v. Yates*, 330 F. App'x 656, 658 (9th Cir. 2009).  Aggravating circumstances also include crimes involving great bodily harm or the threat of bodily harm.  Cal. Rules of Ct. 4.421(a)(1); *see also id.* Rule 4.420(d) (a fact underlying an enhancement may be used to impose the upper term if the court strikes the enhancement).  A sentence may also be aggravated when the crime involved a victim who was particularly vulnerable.  Cal. Rule of Ct. 4.21(a)(3); *see also Weaver*, 149 Cal. App. 4th at 1314 (finding a trial court could reasonably conclude victims of vehicular manslaughter were particularly vulnerable because they "had absolutely no advance warning or ability to attempt to avoid the oncoming car"); *People v. Bishop*, 158 Cal. App. 3d 373, 204 (1984) (victims were found particularly vulnerable because they were very young and of small stature).  *But see People v. Bloom,* 142 Cal. App. 3d 310, 190 (1983) (stating that a victim is not "particularly" vulnerable where all victims of the

crime are vulnerable in the same manner and concluding "[a]ll victims of drunk drivers are 'vulnerable victims'"). Given there were multiple victims who arguably sustained great bodily injury and the deceased victim was only 9 years old, there was sufficient evidence to support an upper term sentence based on at least one aggravating factor.[11] As such, Petitioner has not shown defense counsel gave him unreasonable or grossly inaccurate advice regarding his maximum sentence exposure or his likely chances of success at trial. *See Iaea*, 800 F.2d at 865.

Petitioner also argues his attorney was ineffective for allowing him to plead guilty to the great bodily injury enhancements because, he claims, the victims suffered only "minor injuries." (Pet. at 93-95.) Although the California Court of Appeal did not address this claim specifically, the superior court did. In denying the claim, the court stated:

> As used in Penal Code § 12022.7, "'great bodily injury" (GBI) means a significant or substantial physical injury." (Pen. Code § 12022.7(f).) The injury cannot be insignificant, trivial or moderate (*People v. Armstrong* (1992) 8 Cal. App. 4th 1060, 1066-67 [citation omitted]), but it also does not have to constitute permanent, prolonged or protracted disfigurement, impairment or loss of bodily function (*People v. Escobar* (1992) 3 Cal. 4th 740, 750). Abrasions, lacerations and bruising can constitute GBI. (See *People v. Jung* (1999) 71 Cal. App. 4th 1036, 1042; *People v. Sanchez* (1982) 131 Cal. App. 3d 718, 733.) Petitioner admitted inflicting GBI on Cindy Heffington and Jacques Jordan. The Probation Report indicates, based on the investigating officer's report, that Cindy Heffington suffered "minor to moderate injuries" including, but not limited to, "minor lacerations to her face and head, neck pain and pain to her right hip area." This same report indicates Jacque Jordan suffered "Minor injuries" including "pain to his mid-back area, neck and right shoulder." Although the investigating officer deemed this injuries to be "minor," his

---

[11] Because Petitioner pleaded guilty pursuant to a stipulated sentence, the trial court was not required to state the reasons for imposing the aggravated term. Cal. Rules of Ct. 4.12(a); *see also People v. Villanueva*, 230 Cal. App. 3d 1157, 1162 (1991).

report constitutes a snapshot in time and the court is not
convinced the prosecution could not have established at trial
that they constituted great bodily injury. [Footnote 2: Petitioner
claims that additional police reports, hospital records and victim
statements support the conclusion that the victims' injuries
could not have been found to constitute great bodily injury, but
these documents were not included with the petition.  And of
the documents listed in Petitioner's Exhibits List as pertaining
to this claim (Exhibits 11 and 11a), only Exhibit 11 was
included with the petition.] (See *Escobar, supra*, 3 Cal.4th at
752, citing *People v. Jaramillo* (1979) 98 Cal. App. 3d 830, 836
[a fine line divides an injury from being significant or
substantial from an injury that does not quite meet this
description; it is the trier of fact that should make the
determination].)  In other words, the court cannot declare that,
as a matter of law, the injuries did not constitute GBI.
Therefore, the court will not find Petitioner's attorney
ineffective for advising or allowing Petitioner to admit the GBI
enhancements.

(Lodgment No. 14 at 3-4.)

The state court's denial of this claim was neither contrary to, nor an unreasonable

application of, clearly established law.  Under California law, "some physical pain or

damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great

bodily injury.'"  *People v. Washington*, 210 Cal. App. 4th 1042, 1047 (2012).

A defendant may be found to have caused great bodily injury when the victim sustains

lacerations, bruises and significant soreness.  *People v. Escobar*, 3 Cal. 4th 740, 750

(1992); *see also People v. Sanchez*, 131 Cal. App. 3d 718 (1982) (finding multiple

abrasions and lacerations to the victim's back and bruising of the eye and cheek to be

great bodily injury).

Here, as the state court noted, on the day of the accident, police investigators

described Heffington as suffering lacerations to her face and pain in her neck and hip.

(Lodgment No. 1, Clerk's Tr. at 15.)  She sought treatment at the hospital.  (*Id.*)  At

Petitioner's arraignment, over five months after the accident, the prosecutor stated that

Heffington "still suffers injuries to this [day] . . . [and] . . . [s]he finds it hard to sleep

because of the pain she suffers." (Lodgment No. 17, Ex. 19 at 4.)  A jury could reasonably find these injuries sufficient to sustain a great bodily injury enhancement.  *See People v. Corona*, 213 Cal. App. 3d 589 (1989) (holding a swollen jaw, bruises to head and neck, and sore ribs supported a finding of great bodily injury).  Police reports indicate Jordan suffered pain to his mid-back area, neck and right shoulder.  (Lodgment No. 1, Clerk's Tr. at 15.)   Although Jordan declined to be transported to the hospital, the state court's determination that his injuries could constitute great bodily injury was reasonable under California law.  *See People v. Wade*, 204 Cal. App. 4th 1142, 1150 (2012) (holding great bodily injury does not require a finding that the injury necessitated medical treatment); *People v. Lopez,* 176 Cal. App. 3d 460, 463-465 & fn. 5 (1986) (holding great bodily injury finding was supported by the evidence despite the fact the victims did not seek medical treatment).  This Court is bound by a state court's interpretation of its own criminal statute.  *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993).  As such, Petitioner has not shown defense counsel was unreasonable in advising him to plead guilty to the enhancements.  Furthermore, given that Petitioner was facing great bodily injury enhancements as to two other victims with injuries similar to Heffington's and Jordan's, it was not unreasonable to advise Petitioner to accept a plea agreement under which two of the enhancements were dismissed.[12]  Petitioner has not shown counsel's performance was deficient.  *See Iaea*, 800 F.2d at 866.

Further, the state court reasonably concluded that Dumlao failed to establish a "reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.   Even now, Petitioner does not assert unequivocally that, but for counsel's purportedly deficient performance, he would have insisted on a trial.  He states in his Petition that had he been mentally

---

[12] Kerri Zuba complained of pain to her right shoulder, neck and back and was treated by paramedics at the scene.  (Lodgment No. 1, Clerk's Tr. at 15.) Later, at Petitioner's arraignment, the prosecutor stated that Zuba had to "miss a month of work" and her injuries ultimately "landed her in the hospital."  (Lodgment No. 17, Ex. 19 at 4.)  Candice Loureiro complained of pain to her lower and middle back and neck.  (Lodgment No. 1, Clerk's Tr. at 15.)

competent and "properly advised" by defense counsel, it is "unlikely" he would have pleaded guilty.  (Pet. at 97.)  There is nothing in the record, however, to support even this noncommittal assertion. When he sought to appeal, soon after his sentencing, Dumlao did not want to go to trial.  On August 16, 2010, Dumlao informed the Appellate Defenders that he wanted only "reduced sentencing."  He specifically noted that he wanted "no retrial (unless extremely favorable)."  (Lodgment No. 17, Ex. 48 at 2.)  In addition, Dumlao's brother indicated in an e-mail to appellate counsel that Dumlao stated that he "does not want retrial."  (*Id.* at Ex. 47.)  Dumlao's brother goes on to tell appellate counsel that Petitioner would accept a retrial only if there was a "reduction in [the] maximum sentence on all charges to less than 16 years" and if there was a "safeguard of no increase of charges and no additional charges filed."  (*Id.*)  Thus, the record indicates that although Petitioner may have regretted accepting a 16-year sentence, he wanted it reduced without taking any risk at trial.  Petitioner has failed to establish a reasonable probability that, but for counsel's purportedly deficient performance, he would have rejected the plea agreement and insisted on going to trial, where he could have received an even harsher sentence.

The state court's denial of Dumlao's claim that defense counsel was ineffective in advising him regarding his guilty plea was neither contrary to, nor an unreasonable application of, clearly established law.  28 U.S.C. § 2254 (d)(1); *Williams*, 423 U.S. at 412-13.  Furthermore, the state court's factual findings are reasonably supported by the evidence presented at the state court proceedings.  28 U.S.C. § 2254(d)(2); *Taylor*, 366 F.3d at 1001.  The Court therefore **RECOMMENDS** the claim be **DENIED**.

### D. Failure to File a Demurrer to the Information

Finally, Petitioner argues defense counsel was ineffective in failing to file a demurrer to the information which he claims erroneously alleged great bodily injury enhancements for the same victims as to both count one and count two.  (Pet. at 65-69.)

Petitioner may not raise claims of deprivation of his constitutional rights that occurred prior to his plea.  "When a criminal defendant has solemnly admitted in open

court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also McMann v. Richardson*, 397 U.S. 759, 770-71 (1970).  Under these circumstances, a prisoner may attack only the voluntary and intelligent character of his guilty plea in habeas proceedings.  *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992). To the extent that a petitioner seeks to claim that he received ineffective assistance of counsel premised on his attorney's allegedly faulty advice, he may do so only based upon that advice as it related to the decision to enter his guilty plea.  Any ineffective assistance claims relating to other, earlier, actions by his counsel are barred.  *Tollett*, 411 U.S. at 267.  Accordingly, Dumlao's claim that defense counsel was ineffective in failing to file a motion to dismiss the information is barred.

Even if the claim was not barred by *Tollett*, Dumlao cannot show he is entitled to relief.  In the last reasoned state court decision to address this claim, the California Court of Appeal concluded that Dumlao failed to establish that counsel's performance was deficient or that he was prejudiced.  (*See* Lodgment No. 16 at 2-3.)  At the time the information was filed, it was not improper for the prosecutor to charge great bodily injury enhancements as to both counts one and two.  *See Weaver*, 149 Cal. App. 4th at 1335 (holding that great bodily injury enhancements could be applied to a gross vehicular manslaughter conviction), *overruled by Cook*, 60 Cal. 4th at 935.  As discussed above, to the extent a jury could have found Petitioner guilty on both counts and found all of the alleged great bodily injury enhancements to be true, the trial court would have stayed any duplicative sentence under California Penal Code section 654.  *See Reeves*, 91 Cal. 4th at 56 (concluding section 654 bars sentencing on great bodily injury enhancements against the same victim for separate counts stemming from the same conduct).  Because there was nothing improper about the information, defense counsel's failure to file a motion to dismiss it was neither unreasonable no prejudicial.  *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective

assistance of counsel."); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (holding that failure to take futile action can never be deficient performance).

Therefore, Dumlao's claim is barred under *Tollett*, 411 U.S. at 267.  In addition, the state court's denial of the claim was neither contrary to, nor an unreasonable application of clearly established law.  28 U.S.C. § 2254 (d)(1); *Williams*, 423 U.S. at 412-13.  The Court therefore **RECOMMENDS** the claim be **DENIED**.

E.     Request for Evidentiary Hearing

Dumlao asks this Court to conduct an evidentiary hearing on his claims of ineffective assistance of counsel. (*See* Motion for Evid. Hrg, ECF No. 95.)  Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing."  *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999)  The provisions of 28 U.S.C. § 2254(e)(2) control this decision:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In order to determine whether to grant an evidentiary hearing under § 2254(e)(2), the court must first "determine whether a factual basis exists in the record to support the petitioner's claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005) (citing *Baja*, 187 F.3d at 1078). If not, the court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" *Id.* at 669-70.

A district court's ability to conduct an evidentiary hearing was even more limited by the Supreme Court's decision in *Pinholster*, 563 U.S. at 182. *Stokley v. Ryan*, 659 F.3d 802, 809 (9th Cir. 2011) (noting the decision in *Pinholster* "dramatically changed the aperture for consideration of new evidence" in federal habeas courts). Pursuant to *Pinholster*, a federal court may not consider new evidence developed at a federal court evidentiary hearing on claims adjudicated on the merits in state court unless both the standard set forth in § 2254(d) and the standard set forth in § 2254(e)(2) are satisfied. *Pinholster*, 563 U.S. at 184-85. Therefore, a court must first review the state courts' rejection of petitioner's claims decided on the merits to determine whether a petitioner has "satisfied § 2254(d)(1)'s threshold obstacle to federal habeas relief." *Id.* at 206 (Sotomayor, J., dissenting). This review is limited to the state court record. *Id.*

Here, Dumlao's claims of ineffective assistance of counsel were adjudicated on the merits. *See Richter*, 562 U.S. at 90. Thus, he can only proceed to develop additional evidence if either § 2254(d)(1) or (d)(2) are first satisfied. *See Sully v. Ayers*, 725 F.3d 1057, 1076 (9th Cir. 2013) (citing *Pinholster*, 563 U.S. at 203, n.20) (stating that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief"). For all the reasons discussed above in sections V(B)-(D) of this Report and Recommendation, Dumlao has failed to satisfy § 2254(d). Accordingly, Petitioner's request for an evidentiary hearing is **DENIED**.

## F.   Motion for Discovery

Finally, Petitioner requests discovery to "bolster" his claims of ineffective assistance of counsel. (*See* Mot. For Disc., at 3-5, ECF No. 97.) Rule 6(a) of the Rules Governing § 2254 cases provides that the court may, for good cause, allow discovery and

may limit the extent of discovery. Unlike civil litigants, a habeas petitioner is not presumptively entitled to discovery. *See Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999). Good cause may be shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

As discussed above, however, with regard to claims that were adjudicated on the merits in state court, this Court is limited to facts presented to the state court. *Pinholster*, 563 U.S. at 182. Thus, Dumlao is not entitled to discovery. *See Runningeagle v. Ryan*, 686 F.3d 758, 773-74 (9th Cir. 2012) (denying the petitioner's request for discovery because the state courts denied his claim on its merits, and thus, the *Pinholster* rule limited review under section 2254(d) to the record before the state courts); *Ybarra v. McDaniel*, 656 F.3d 984, 992 n.3 (9th Cir. 2011).

## VI.  CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Michael M. Anello under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, the **DENIES** Petitioner's motion for an evidentiary hearing and **DENIES** his motion for discovery.

In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **February 10, 2016**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **February 17, 2016**. The parties are advised that failure to file objections within the specified time may waive the right to

raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  January 20, 2016

Hon. Jill L. Burkhardt
United States Magistrate Judge